# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SHERMAN B. RONES,

      Plaintiff,

      v.                                         Case No. 09-C-949

BELINDA SCHRUBBE and MARY GORSKI[1],

      Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. #21), DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. #29), AND DISMISSING THIS ACTION

Defendants have filed a motion for summary judgment.[2] For the reasons set forth below, motion will be granted and this case will be dismissed.

### I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot USA, Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[1] The correct spelling of this defendant's name is "Gorske". *See* Affidavit of Mary Gorske.

[2] Plaintiff filed a document titled Motion for Summary Judgment. This filing is actually a response to defendants' summary judgment motion.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. FACTS

Plaintiff, Sherman B. Rones, was incarcerated at Waupun Correctional Institution (WCI) from August 26, 1999, until January 22, 2008. Mary Gorske was employed as a nurse practitioner at WCI at all times relevant and Belinda Schrubbe is a registered nurse and manager in the WCI Health Services Unit (HSU).

The complaint, which was filed under penalty of perjury, asserts that defendants were deliberately indifferent to plaintiff's serious medical needs based on the following: he entered WCI's Health and Segregation Unit on April 9, 2007, and did not receive medical treatment until May 11, 2007; WCI officers dispensed inadequately his pain medication; and nurses entered an injurious set of instructions on his medical chart resulting in untrained security guards withholding Iprin medication and causing him to become immobile. In addition, the complaint charges that plaintiff was denied transfer to

the C-Wing where he could obtain his Iprin medication and failed to receive an interview following repeated Health Service Requests for medication refills.

On April 21, 1999, while at Dodge Correctional Institution, plaintiff reported a history of sciatica but that he had no problems at that time. Between April 1999 and November 2006, HSU staff saw plaintiff numerous times for medical issues but he did not report back pain or problems during those appointments. On December 5, 2006, HSU responded to plaintiff's Health Services Request for an appointment to obtain Ibuprofen and/or a muscle relaxer by delivering 30 tablets of Ibuprofen to his cell hall.

On January 17, 2007, the HSU informed plaintiff that a sick call appointment was scheduled in response to his request for an extra mattress. However, plaintiff refused to be seen by the nurse on January 19, 2007, to address his extra mattress request and his request was therefore denied because he would not participate in the qualifying process. On February 14, 2007, plaintiff received a body fat analysis, and a hypertension/dyslipidema treatment plan in addition to "labs."

Plaintiff entered WCI's Health and Segregation Complex on April 9, 2007. His medications were monitored and altered, and on April 16 he was responsive when checked. No complaints were noted when plaintiff was checked on during segregation rounds on May 8, 2007.

On May 11, 2007, plaintiff had a urinalysis and hematology tests. He was also seen on that date in response to a Health Services Request from two days earlier in which he stated he was unable to walk to the lab for a test that morning. Plaintiff asked for Iprin and Nurse Gorske complied. Plaintiff then walked back to his cell without taking the Iprin. Later, Nurse Gorske discovered that plaintiff had already been given Iprin.

3

Plaintiff had a Tuberculin skin test on May 15, 2007. Later that day, no complaints were noted when he was visited during segregation rounds.

On May 21, 2007, Nurse Gorske saw plaintiff to follow-up of his complaints regarding right hip pain, which he claimed was due to sciatica. During that appointment, plaintiff did not allow Nurse Gorske to palpate his right buttock, refused to stand up to be examined, and demonstrated strength in resisting the extension of his right leg from his sitting position. Nurse Gorske was unable to diagnose the pain due to plaintiff's lack of cooperation and she informed him she could not prescribe medication without a diagnosis. Plaintiff refused a prescription for Ibuprofen, and demanded Naproxen be given to him that day. Nurse Gorske referred him to the doctor. According to plaintiff, Nurse Gorske treated him unprofessionally and was intolerant. He avers that he did not receive medication before, during, or after exam. Plaintiff also avers that he arrived at the appointment shouldered by two officers.

On May 30, 2007, Nurse Schrubbe responded to two of plaintiff's Health Services Requests. One related to over-the-counter pain medication and the other requested physical therapy and Naproxen. In response to the first request, Nurse Schrubbe informed plaintiff that a nurse saw him on May 11, 2007, and gave him Iprin for pain, and that Nurse Gorske saw him on May 21, 2007, at which time she referred him to the physician. Nurse Schrubbe informed plaintiff he had an upcoming physician appointment and that the physician should assess him. On June 5, 2007, Nurse Schrubbe responded to plaintiff regarding his letter to the warden concerning pain medication. She reiterated the importance of letting medical staff assess him.

On June 12, 2007, the physician saw plaintiff for follow-up of sciatica, and conducted a complete examination of his hip and knees. Plaintiff was given analgesic balm and educated on hip stretching exercises.

After that, plaintiff was seen several times for other medical issues and did not report any problems with his back or hip. On January 22, 2008, he was transferred to Green Bay Correctional Institution.

### III. ANALYSIS

A deliberate indifference claim requires an objectively serious risk of harm and a subjectively culpable state of mind. *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A deliberate indifference claim based on inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards*, 478 F.3d at 830-31 (quoting *Greeno*, 414 F.3d at 653). The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653 (citing *Farmer*, 511 U.S. at 834). Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Edwards*, 478 F.3d at 831 (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)); *Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). Yet, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly

5

inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir.1996)).

It is undisputed that medical personnel saw plaintiff multiple times between January and May 2007. The HSU denied his request for an extra mattress on January 19, 2007, because he refused to be seen by the nurse. Plaintiff entered the Health and Segregation Complex on April 9, 2007, and on April 16, 2007, his "meds" were monitored and altered. On May 11, 2007, Nurse Gorske gave plaintiff Iprin, he had unrelated tests on May 15, 2007, and on May 21, 2007, Nurse Gorske saw him again regarding his right hip or sciatica pain. According to plaintiff, at this visit, Nurse Gorske treated him unprofessionally and did not give him any medication. However, it is undisputed that plaintiff would not cooperate with the examination thereby preventing Nurse Gorske from diagnosing any problem.

On May 30, 2007, Nurse Schrubbe advised plaintiff he had a doctor appointment coming up and that he should let the doctor assess him. Plaintiff's physician appointment was on June 12, 2007, at which time he received analgesic balm and was educated on hip stretching exercises.

The record shows that plaintiff's Health Service Requests were responded to promptly and regularly. His letter to the warden concerning medication was addressed by medical staff and he was seen by medical staff for his complaints. Although the course of plaintiff's treatment did not go as he wished, plaintiff's disagreement with defendants' treatment does not show an absence of medical judgment tantamount to deliberate indifference to his medical needs. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Moreover, nothing suggests that defendants' course of treatment was so far afield

of accepted professional standards as to raise an inference of deliberate indifference to any serious medical concerns of the plaintiff. See id.; *Estate of Cole*, 94 F.3d at 261-62.

Moreover, plaintiff contributed to any delay in his treatment. Nurse Gorske attempted to diagnose plaintiff but was unable to do so because he refused to cooperate with the assessment. Also, plaintiff's history of sciatica was noted in his transfer/receiving screening as soon as he entered WCI in 1999. However, the plaintiff's medical records indicated that he had no back pain or problems between 1999 and 2006 and prison policy required a diagnosis prior to treatment. Once the physician was able to assess plaintiff, he was diagnosed and treated for his sciatica. See *Pinkston v. Madry*, 440 F.3d 879, 892 (7th Cir. 2006) (affirming judgment in favor of medical personnel on claim of deliberate indifference where inmate was the sole cause of delay in treatment); *Walker v. Peters*, 233 F.3d 494, 500-01 (7th Cir. 2000) (holding that prison doctor who withheld HIV medication did not act with deliberate indifference where inmate refused to take HIV test); *Norfleet*, 439 F.3d at 397 (no violation found where prison official was just following policy in making prisoner wait ten days to get prescription refill).

Finally, to the extent plaintiff claims that defendants are liable for correctional officers' failure to dispense his medication, it is well settled that to be liable under 42 U.S.C. § 1983 a defendant is required to be personally involved in a claim, and that § 1983 does not allow actions against persons merely because of their supervisory roles. *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010); *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Therefore,

7

**IT IS ORDERED** that defendants' motion for summary judgment (Docket #21) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion summary judgment (Docket #29) is **DENIED** on the ground that it merely responds to defendants' motion.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 11th day of March, 2011.

                                      BY THE COURT

                                      /s/ C. N. Clevert, Jr.
                                      C. N. CLEVERT, JR.
                                      Chief U.S. District Judge